United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re                                                    No. C-14-4891 MMC

SYNERGY ACCEPTANCE                    **ORDER DENYING DEFERRED PORTION**
CORPORATION,                                   **OF PLAINTIFF'S OBJECTIONS TO**
                                                            **BANKRUPTCY COURT RULINGS**
Debtor
_____

E. LYNN SCHOENMANN, Trustee of the
Bankruptcy Estate of Synergy Acceptance
Corporation,

              Plaintiff,

   v.

JAMES A. TORCHIA, et al.,

              Defendants.
_____/

       Before the Court are four documents filed March 20, 2015:  (1) "Trustee Objections

to Bankruptcy Court Rulings on Summary Judgment"; (2) "Trustee Objection to Bankruptcy

Court Ruling Striking Declaration of Loren Kieve in Support of the Trustee's Motion for

Summary Judgment"; (3) "Trustee Objection to Bankruptcy Court Ruling on Defendants'

Motion to File a Second Amended Answer and Grant of Summary Judgment Based on

That Amendment"; and (4) "Trustee Objections to Bankruptcy Court Rulings on the

Trustee's Motions to Strike Defendants' Summary Judgment Evidence" (collectively,

"March 2015 Objections").  Defendants have filed an "Omnibus Response" to the March

2015 Objections,[1] to which the Trustee has filed a reply.

By order filed June 29, 2015, the Court denied the March 2015 Objections to the extent the Trustee seeks review of non-dispositive rulings made by the bankruptcy court. By said order, the Court deferred ruling on the March 2015 Objections to the extent the Trustee seeks review of dispositive rulings, specifically, orders granting partial summary judgment in favor of defendants and orders granting or denying motions to strike evidence offered in connection with defendants' motion for summary judgment, to afford the parties leave to provide the Court with the complete record considered by the Bankruptcy Judge. Thereafter, the Trustee and defendants provided this Court with the complete record.

Having read and considered the papers filed in support of and in opposition to the March 2015 Objections, and having conducted a de novo review of the record, the Court hereby rules as follows on the deferred portion of the March Objections, as well as on defendants' argument, made in its Omnibus Response, that the Trustee waived her right to object.

## BACKGROUND

In the above-titled action, an adversary proceeding initially filed in the bankruptcy court,[2] the Trustee seeks to recover, on behalf of the bankruptcy estate of debtor Synergy Acceptance Corporation, four payments, alleged to be fraudulent conveyances (see Trustee's Compendium of Exhibits (hereinafter, "Pl.'s Compendium"), filed March 20, 2015, Ex. 18 ¶¶ 71, 109-118), as well as the value of four "write-offs" of debts allegedly owed to the debtor (see id. Ex. 18 ¶¶ 51, 109-118).  The challenged payments and write-offs were allegedly made pursuant to an agreement under which Synergy Equity LLC ("Synergy Equity") became the sole owner of the debtor.  (See id. Ex. 18 ¶¶ 33, 42, 62.)

---

[1]Defendants are James A. Torchia, Marc A. Celello, Clear Skies Holding Company, Cars 1st LLC, Credit National Auto Sales, LLC, Credit Nation Lending Services LLC, Jaro LLC, National Viatical, Inc., River Green Investment Management LLC, and River Green LLC.

[2]Pursuant to General Order 24, all actions related to the Bankruptcy Code are referred to the bankruptcy court.

1     On October 22, 2014, the Bankruptcy Judge issued a Certification of Readiness for

2   Jury Trial and Recommendation for Withdrawal of Reference ("Certification of Readiness"),

3   by which the Bankruptcy Judge advised this Court that pretrial proceedings had concluded,

4   recommended the reference to bankruptcy court be withdrawn, and, as defendants had

5   timely demanded a jury, identified the claims remaining for trial before a jury.  In the

6   Certification of Readiness, the Bankruptcy Judge also summarized various rulings issued

7   during the pretrial proceedings, including orders granting summary judgment in favor of

8   defendants on certain of the Trustee's claims.

9     On October 30, 2014, defendants filed in the bankruptcy court a motion to withdraw

10   the reference, and, on November 5, 2014, the Trustee filed a response in which the

11   Trustee agreed withdrawal of the reference was appropriate.  By order filed November 13,

12   2014, this Court granted defendants' motion for withdrawal of the reference.  Thereafter, at

13   a Case Management Conference conducted January 16, 2015, the Court, at the parties'

14   joint request, set a briefing schedule to address the Trustee's objections.

**DISCUSSION**

16     A proceeding instituted in bankruptcy court may be either a "core" or a "non-core"

17   proceeding.  See Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2171 (2014).

18   In a "core" proceeding, the bankruptcy court has the power to "hear and determine" the

19   matter and enter a "final judgment."  See id. at 2171-72 (internal quotation and citation

20   omitted).  In a "non-core" proceeding, the bankruptcy court has "the narrower power to

21   'hear' [the] proceeding . . . and to 'submit proposed findings of fact and conclusions of law

22   to the district court' for the entry of final judgment," see In re Bellingham, 702 F.3d 553, 565

23   (9th Cir. 2012) (quoting 28 U.S.C. § 157(c)(1)), after which the district court "review[s] de

24   novo those matters to which any party has timely and specifically objected," see 28 U.S.C.

25   § 157(c)(1).

26     Here, the Bankruptcy Judge determined the instant proceeding was non-core.  See

27   28 U.S.C. § 157(b)(3) (providing bankruptcy court shall determine whether proceeding is

28   core or non-core); see also Executive Benefits Ins. Agency, 134 S. Ct. at 2174 (holding

1  "fraudulent conveyance claims" are "not core") (internal quotation omitted).  Where, as

2  here, a bankruptcy judge "hear[s] a proceeding that is not a core proceeding," the

3  bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the

4  district court, and any final order or judgment shall be entered by the district judge after

5  considering the bankruptcy judge's proposed findings and conclusions and after reviewing

6  de novo those matters to which any party has timely and specifically objected."  See 28

7  U.S.C. § 157(c)(1).

8        For the reasons expressed in its order of June 29, 2015, the Court has found the

9  Bankruptcy Judge's orders granting summary judgment in favor of defendants are final

10  dispositions of the claims summarily adjudicated, and, as the Trustee has argued, the

11  Certification of Readiness is to be treated as the bankruptcy court's proposed Findings of

12  Fact and Conclusions of Law to the extent the Certification of Readiness references the

13  orders granting summary judgment.  See, e.g., In re Nady, 138 B.R. 608, 610 (D. Nev.

14  1992) (explaining, where bankruptcy court finds some non-core claims in adversary

15  complaint triable and others appropriate for summary judgment, bankruptcy court submits

16  to district court proposed findings of fact and conclusions of law as to claims for which it

17  has found summary judgment is appropriate).

18  **A.  Waiver of Right to Object**

19        Defendants argue the Trustee waived her right to object, by failing to comply with the

20  applicable rules governing the manner in which a party must present its objections.

21        As set forth above, a district court, when "considering the bankruptcy court's

22  proposed findings and conclusions" in a non-core proceeding, reviews "de novo those

23  matters to which any party has timely and specifically objected."  See 28 U.S.C.

24  § 157(c)(1).  The deadline to file an objection and the content that must be included therein

25  are set forth in the Federal Rules of Bankruptcy Procedure, which provide that "[w]ithin 14

26  days after being served with a copy of the proposed findings of fact and conclusions of law

27  a party may serve and file with the clerk written objections which identify the specific

28  proposed findings or conclusions objected to and state the grounds for such objection."

4

See Fed. R. Bankr. P. 9033(b).  Consistent therewith, the Civil Local Rules of this District require that "[a]ny objection to the proposed findings of fact and conclusions of law" shall include, inter alia, "[t]he issues raised by the objections" and "[t]he specific portion of the proposed findings of fact and conclusions of law . . . to which objection is made."  See B.L.R. 9033-1(a).  Where a party fails to file objections to proposed findings of fact and conclusions or law, or files objections that do not comply with Rule 9033, the party waives its right to seek de novo review.  See Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 621 (8th Cir. 2009) (holding, "pursuant to Rule 9033(d), [plaintiffs] waived their right to contest the bankruptcy court's dismissal recommendation by failing to object"); In re Nantahala Village, Inc., 976 F.2d 876, 880 (4th Cir. 1992) (holding party who failed to object to bankruptcy judge's recommendation "waived its rights" to appeal district court's order adopting recommendation); Messer v. Peykar Int'l Co., 510 B.R. 31, 38-39 (S.D. N.Y. Bankr. 2014) (holding defendants' motion, which defendants requested district court treat as "objections" to bankruptcy court's recommendation, did not "contain sufficient specificity to qualify as objections" and, consequently, defendants waived right to de novo review of recommendation).

Here, the Certification of Readiness, which the Trustee has argued and the Court agrees, include proposed findings of fact and conclusions of law, was filed and electronically served on the Trustee on October 22, 2014.  Fourteen days later, on November 5, 2014, the Trustee filed in the bankruptcy court a document titled "Trustee's Response to Certificate of Readiness for Jury Trial and Recommendation for Withdrawal of Reference, and Defendants' Motion to Withdraw the Reference; and Objections to Bankruptcy Court's Pretrial Rulings Pursuant to Bankruptcy Rule 9033" (hereinafter, "November 2014 Objections").  In the portion of said filing titled "Objections," the Trustee stated:

> The Trustee objects to the bankruptcy court's pretrial rulings listed on Exhibit A hereto, indicated by docket number and title of order or ruling. Because the objectionable pretrial rulings are numerous, and some are lengthy and address multiple claims, it is impracticable to indicate here all of the grounds for objection. The Trustee's intent and request is to give her specific, detailed objections and the

1

2    arguments supporting them according to a briefing schedule that is specially set by
     the district court.

3    (See November 2014 Objections at 3:16-22.)

4        The Court finds the November 2014 Objections fail to comply with Rule 9033(b) and

5    Bankruptcy Local Rule 9033-1.  Even assuming that a party's stating the title and docket

6    number of a challenged order suffices to "identify the specific proposed findings or

7    conclusions objected to," see Fed. R. Bankr. P. 9033(b), and "[t]he specific portion of the

8    proposed findings of fact and conclusions of law . . . to which objection is made," see

9    B.L.R. 9033-1(a)(2), the November 2014 Objections in no way "state the grounds for such

10   objection," see Fed. R. Bankr. P. 9033(b), or identify "[t]he issues raised by the objections,"

11   see B.L.R. 9033-1(a)(1).  Indeed, the November 2014 Objections specifically disclaim any

12   attempt to do so, and assert the grounds and issues will be set forth at a later date.

13       The Trustee contends the November 2014 Objections nonetheless are sufficient in

14   light of Bankruptcy Local Rule 9033-1(e), which, in relevant part, provides:  "If an objection

15   is filed within the time specified which does not comply substantially with this rule, the

16   Bankruptcy Judge who issued the proposed findings, conclusions, order or judgment may

17   issue a recommendation that the matter be treated as if no objection had been filed . . . ."

18   See B.L.R. 9033-1(e).  In particular, the Trustee argues, because the Bankruptcy Judge

19   here "made no adverse procedural recommendation," the Trustee has "preserved her right

20   to plenary District Court review."  (See Pl.'s Objections to Bankr. Court's Rulings on Summ.

21   J., filed March 20, 2015, at 2:6-13.)  The Court disagrees.

22       The purpose of Bankruptcy Rule 9033-1(e) is to facilitate case management in the

23   District Court.  Rule 9033-1 provides for two types of assignments in non-core bankruptcy

24   cases:  (1) where no objection is filed, the matter is assigned to "the General Duty Judge,"

25   see B.L.R. 9033-1(d); and (2) where an objection is filed, the matter is assigned to a

26   //

27   //

28   //

6

1   "District Judge pursuant to the District Court's Assignment Plan," see B.L.R. 9033-1(c).[3]

2   Rule 9033-1(e) provides for an exception to the general rule; in particular, it allows certain

3   matters to be handled summarily by the General Duty Judge.  Nothing in Rule 9033-1(e),

4   however, requires the bankruptcy court to review the sufficiency of an objection, and,

5   consequently, the Court finds no inference can be drawn from the absence of a

6   recommendation by the Bankruptcy Judge.

7        In contrast to the November 2014 Objections, the March 2015 Objections identify

8   specific proposed findings and conclusions to which the Trustee objects and states the

9   grounds for each such objection.  The March 2015 Objections, however, were filed in

10  district court more than four months after the deadline set forth in Rule 9033 had expired.

11  Although not expressly requested to do so by the Trustee, the Court next considers

12  whether it has the discretion to extend the deadline to file objections, such that the March

13  2015 Objections might be considered timely.

14        The circumstances under which a deadline to file objections may be extended are

15  set forth in Rules 9033 and 9006.  Pursuant to Rule 9006, a "court may enlarge the time for

16  taking action under Rule[ ] . . . 9033, only to the extent and under the conditions stated in

17  [that] rule[ ]."  See Fed. R. Bankr. Proc. 9006(b)(3).  Under Rule 9033, a "bankruptcy judge

18  may for cause extend the time for filing objections by any party for a period not to exceed

19  21 days from the expiration of the time otherwise prescribed by [said] rule," see Fed. R.

20  Bank. P. 9033(c), i.e., no later than 35 days after the date on which the proposed findings

21  of fact and conclusions of law were served on the parties, see Fed. R. Bankr. P. 9033(b)-

22  (c).  Consequently, even if the Court construes the March 2015 Objections as including a

23  request for an extension of time, the Court lacks authority to extend the deadline to object.

24  See In re Hill, 811 F.2d 484, 486 (9th Cir. 1987) (recognizing Rule 9006 "confers discretion

25

26        [3]Under the Assignment Plan, the November 2014 Objections were assigned to the
27  undersigned pursuant to Section D.7 of the Assignment Plan, which provides that "the
    Clerk shall assign a bankruptcy matter to the same judge who was assigned any previously
28  filed bankruptcy matter arising from the same case in the United States Bankruptcy Court."
    See General Order No. 44, § D.7; see also Civil Case No. 13-0306 MMC.

upon the bankruptcy court to permit acts to be performed after the expiration of the time limit [in rule listed therein]," but noting bankruptcy court lacks discretion to do so unless "the conditions stated in that rule" are satisfied) (alteration omitted); see also Gordon v. Kelly, 988 F.2d 1000, 1001 & n.1 (9th Cir. 1993) (holding "language [of Rule 9006(c)] forecloses application of [Rule 60(b)'s] excusable neglect standard"); Infrastructure Service Co. v. Firestone, 328 B.R. 804, 806 (C.D. Cal. 2005) (denying motion seeking reconsideration of order in which district court declined to hear untimely objections filed in district court; finding "Rule 9033 does not provide for the consideration of any written objections at the district court level other than those already made at the bankruptcy court level").

Accordingly, the Trustee having waived her right to seek de novo review of the proposed findings of fact and conclusions of laws encompassed in the Certificate of Readiness, the deferred portion of the March 2015 Objections will be denied.

**B. Merits of Objections**

Even assuming the March 2015 Objections had been timely filed, the Court, for the reasons stated below, finds on de novo review that defendants are entitled to summary judgment on the claims discussed below, i.e., the claims on which the Bankruptcy Judge found defendants were entitled to summary judgment. Consequently, the Court, for this additional reason, will deny the deferred portion of the March 2015 Objections.

**1. Procedural Background**

In the operative complaint, the Amended Complaint ("AC") filed March 28, 2013 in the bankruptcy court (see Pl.'s Compendium Ex. 18), the Trustee seeks, on behalf of the bankruptcy estate, to recover four payments allegedly "made through [a third party] and [the debtor] to [defendant] Clear Skies [Holding Company]," specifically, payments made in, respectively, July 2007, October 2007, December 2007, and January 2008 (see id. Ex. 18 ¶¶ 71, 112, 116, 118), and to recover the value of four "write-offs" of debts assertedly owed to the debtor by defendant James Torchia ("Torchia") or by "entities he controlled" (see id. Ex. 18 ¶ 51-52; see also id. Ex 18 ¶¶ 112, 116, 118).

By order filed May 17, 2013, the Bankruptcy Judge granted in part and denied in part defendants' motion to dismiss the AC.  (See Certification of Readiness at 5:23 - 6:5.)[4] After said ruling, the following Counts remained:

(1)  Count IV, titled "Avoidance of Fraudulent Transfers under 11 U.S.C. § 544(b); Cal. Civ. Code § 3439.04," as against all defendants, by which the Trustee seeks to avoid the above-referenced four payments and write-offs;

(2)  Count V, titled "Avoidance of Fraudulent Transfers under 11 U.S.C. 544(b); Cal. Civ. Code § 3439.05," as against all defendants, by which the Trustee seeks to avoid the above-referenced four payments and write-offs;

(3)  Count VI, titled "Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550," as against all defendants, by which the Trustee seeks to recover the above-referenced payments and write-offs;

(4)  Count VIII, titled "Breach of Fiduciary Duty," as against Torchia and Marc A. Celello ("Celello"), by which the Trustee seeks damages allegedly caused to the debtor by the above-referenced payments and write-offs.

(5)  Count IX, titled "Rescission and Money Due and Owing," as against all defendants, and to the extent the Trustee seeks rescission of agreements to write-off the above-referenced debts.

On March 13, 2014, defendants filed a Counter-Motion for Summary Judgment (see Defs.' Notice of Filing (hereinafter "Defs.' Notice"), filed July 7, 2015, Ex. 53),[5] by which defendants sought summary judgment on the above-referenced Counts in the AC.  The Bankruptcy Judge subsequently issued two orders that, in sum, found defendants were entitled to summary judgment on (1) the entirety of Count IV, (2) the claims in Counts V and VI for, respectively, avoidance of and recovery the payments, (3) the claim in Count VI for recovery of the write-offs except (a) to the extent the Trustee seeks to recover from

---

[4]The March 2015 Objections do not challenge said order.

[5]Defendants' motion was filed in response to a motion for summary judgment that had been filed by the Trustee and thereafter was denied by the Bankruptcy Judge.

1   defendants Torchia, Synergy Motor Company ("Synergy Motor"), and National Viatical, Inc.

2   ("National Viatical") the write-off made to each such defendant, and (b) to the extent the

3   Trustee seeks to recover the write-off made to third party Dun Right Automotive,[6] and

4   (4) the claim remaining in Count IX after the ruling on defendants' motion to dismiss, i.e.,

5   the claim for rescission.  In addition, the Bankruptcy Judge found defendants were entitled

6   to summary judgment as to the issues of alter ego and intentional fraud, which issues were

7   encompassed in several Counts.[7]

8   **2.  Legal Standard:  Summary Judgment**

9   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant

10  summary judgment if the movant shows that there is no genuine issue as to any material

11  fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P.

12  56(a).

13  The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986),

14  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co.

15  v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary

16  judgment show the absence of a genuine issue of material fact.  Once the moving party

17  has done so, the nonmoving party must "go beyond the pleadings and by [its] own

18  affidavits, or by the depositions, answers to interrogatories, and admissions on file,

19  designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477

20  U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

21  its burden under Rule 56[ ], its opponent must do more than simply show that there is some

22  metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the

23  [opposing party's] evidence is merely colorable, or is not significantly probative, summary

24

25  [6]The AC does not expressly allege the basis on which any defendant named therein
26  could be held liable for the acts of Dun Right Automotive, nor did the parties' respective
    motions for summary judgment or the Bankruptcy Judge's orders address that issue.

27  [7]Defendants' motion was denied to the extent it sought summary judgment on
28  (1) the claims in Counts V and VI for, respectively, avoidance of and recovery of the four
    write-offs, and (2) Count VIII.

1   judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

2   "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

3   most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587

4   (internal quotation and citation omitted).

5   **3. De Novo Review**

6          As discussed in the Court's order of June 29, 2015, the Court construes the

7   Certificate of Readiness as the Bankruptcy Judge's proposed findings of fact and

8   conclusions of law to the extent it references the orders granting in part defendants' motion

9   for summary judgment.  The Court next conducts a de novo review of the record, to the

10  extent the March 2015 Objections include specific objections to the proposed findings of

11  fact and conclusions of law.  See 28 U.S.C. § 157(c)(1) (providing district judge shall

12  "review[ ] de novo those matters to which any party has timely and specifically objected").[8]

13               **a. Counts IV, V, and VI:  Avoidance/Recovery of Payments**

14         Counts IV, V, and VI all include a claim seeking avoidance of or recovery of the

15  above-referenced four payments made to defendant Clear Skies.  The Bankruptcy Judge

16  recommends granting summary judgment on each such claim.

17               **(1) October 2007, December 2007, and January 2008 Payments**

18         The statutes on which the Trustee bases Counts IV, V, and VI provide that "[a]

19  transfer made . . . by a debtor" may be avoided under certain circumstances.  See Cal. Civ.

20  Code §§ 3439.04(a), 3439.05.  Consequently, to the extent said Counts are based on a

21  claim that the Trustee is entitled to avoid the October 2007, December 2007, and January

22  2008 payments, the Trustee must establish, inter alia, that the subject payments were

23  made by the debtor.

24         In their moving papers, defendants offer evidence to establish that the October

25  2007, December 2007, and January payments to Clear Skies were made by a third party,

26  ───────────────

27         [8]The March 2015 Objections include no specific argument challenging the
    Bankruptcy Judge's recommended conclusions that defendants are entitled to summary
28  judgment on the claim for rescission or as to the issue of intentional fraud.  Consequently,
    the Court adopts those recommendations without further discussion herein.  See id.

and not by the debtor.  Specifically, defendants offer bank records showing that American

Pegasus Auto Loan Segregated Portfolio, a third party, wired the subject funds to a trust

fund "for the benefit of" Synergy Equity, also a third party, and that Synergy Equity's trust

fund, in turn, transferred the subject funds to Clear Skies (see Defs.' Notice Ex 60, Tabs

16-25; Ex. 56 ¶¶ 30.b-30.d) "to purchase the shares of stock of [the debtor]" that were held

by Clear Skies (see id. Ex. 56 ¶¶ 24, 27).

The Court finds the above-referenced evidence is sufficient to meet defendants'

initial burden to show "no genuine dispute as to any material fact" exists.  See Fed. R. Civ.

P. 56(a).  Indeed, in the March 2015 Objections, the Trustee does not contend defendants'

evidence, if admissible, is insufficient to meet their initial burden under Rule 56.  Rather, the

Trustee contends defendants' evidence is inadmissible, and, in any event, that the Trustee

has offered sufficient evidence to raise a triable issue of material fact.

**(a)  Objection Based on Rule 37**

In support of her argument that defendants' evidence is inadmissible, the Trustee

argues the bank records on which defendants rely were not produced in defendants' initial

disclosures as required by Rule 26 of the Federal Rules of Civil Procedure, and,

consequently, are inadmissible under Rule 37.

Under Rule 26, a party "must, without awaiting a discovery request, provide to the

other parties . . .  a copy – or a description by category and location – of all documents . . .

that the disclosing party has in its possession, custody, or control and may use to support

its . . . defenses, unless the use would be solely for impeachment."  See Fed. R. Civ. P.

26(a)(1)(A); see also Fed. R. Bankr. P. 7026 (providing Rule 26 "applies in adversary

proceedings").  A party must make such disclosure within fourteen days of the initial case

management conference, see Fed. R. Civ. P. 26(a)(1)(C), and must supplement the

disclosure "in a timely manner if the party learns that in some material respect the

disclosure . . . is incomplete or incorrect, and if the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in

writing," see Fed. R. Civ. P. 26(e)(1).  "If a party fails to provide information . . . as required

by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . ., unless the failure was substantially justified or is harmless."  See Fed. R. Civ. P. 37(c)(1); Fed. R. Bankr. P. 7037 (providing Rule 37 "applies in adversary proceedings").

Here, pursuant to Rule 16, the Bankruptcy Judge set a deadline of October 13, 2013, to complete fact discovery.  (See Pl.'s Compendium Ex. 25 at 2:26); Fed. R. Civ. P. 16(b)(3)(B) (providing scheduling order may "modify the timing of disclosures under Rules 26(a) and 26(e)(1)"); Fed. R. Bankr. P. 7016 (providing Rule 16 "applies in adversary proceedings").  Consequently, the deadline to supplement initial disclosures was October 13, 2013, and, pursuant to Rule 37, documents disclosed to the Trustee thereafter cannot be used to support defendants' motion unless the late disclosure was substantially justified or is harmless.

The documents on which defendants rely fall within four categories, which the Court next addresses in turn.

First, defendants have submitted evidence showing, and the Trustee has not disputed defendants' evidence, that portions of three documents, specifically, pages 2 and 3 of Exhibits 19, 22, and 25, were produced by defendants to the Trustee on July 19, 2013, prior to the close of fact discovery.  (See Defs.' Notice Ex. 65 at 6:23-25, 7:6-8, 18-20; id. Ex. 66 ¶ 13 and Ex. K thereto.)  Having been timely produced, said portions of Exhibits 19, 22, and 25 are not inadmissible under Rule 37.

Second, defendants have submitted evidence showing, and the Trustee has not disputed defendants' evidence, that one document, specifically, Exhibit 18, was produced to defendants by the Trustee.  (See Defs.' Notice Ex. 65 at 6:11-13; id. Ex. 66 ¶ 16 and Ex. N thereto.)  Under such circumstances, a failure by defendants to disclose said document to the Trustee is harmless, and Exhibit 18 is not inadmissible under Rule 37.

Third, defendants have submitted evidence showing, and the Trustee has not disputed defendants' evidence, that three exhibits, specifically, Exhibits 17, 21, and 24, and portions of three other documents, specifically, page one of Exhibits 19, 22, and 25,

were not in defendants' possession, custody or control until February 13, 2014, and were disclosed to the Trustee that same date.  (See Defs.' Notice Ex. 65 at 3:5-6, 20-22; id. Ex. 66 ¶ 4 and Ex. B thereto.)  Said documents, all of which are bank records, were received by defendants as discovery in the course of another action not involving the Trustee, which action is pending in the Northern District of Georgia against some of the defendants named herein.  (See id. Ex. 65 at 2:13-18, 3:1-6, 6:18-19, 7:2-3, 14-15; id. Ex. 60, Tab 30; id. Ex. 66 ¶ 4.)  Assuming, arguendo, those defendants named herein who were also named in the Georgia action could have earlier sought production of the subject bank records, and that any such delay was not substantially justified, the late disclosure nonetheless is harmless. As set forth above, the documents are offered to establish that Synergy Equity, a third party, made the subject payments to Clear Skies, which issue is not disputed by the Trustee.[9]  Indeed, in her motion for summary judgment, filed before defendants' motion for summary judgment, the Trustee took the position that the October 2007, December 2007 and January 2008 payments to Clear Skies were made by Synergy Equity.  (See Pl.'s Compendium, Crom Decl. ¶ 9.)  Consequently, Exhibits 17, 21, 24, and page one of Exhibits 19, 22 and 25 are not inadmissible under Rule 37.

Fourth, and lastly, defendants have submitted evidence showing, and the Trustee has not disputed defendants' evidence, that three documents, specifically, Exhibits 16, 20, and 23, were not in defendants' possession, custody or control until March 6, 2014, when they were produced to defendants during the course of the above-referenced Georgia action, and that they were disclosed to the Trustee on March 10, 2014, four days later. (See Defs.' Notice Ex. 65 at 4:25-26; id. Ex. 66 ¶ 7 and Ex. E thereto.)  As said documents were offered to show that a third party, rather than the debtor, made the October 2007, December 2007, and January 2008 payments to Clear Skies, the failure to produce them prior to the close of discovery was, for the reasons stated above, harmless.

//

---

[9]As discussed below, the Trustee's position is that the payments, although made by Synergy Equity, should be treated as if they were made by the debtor.

**(b)  Whether Material Issue of Fact Exists**

In an effort to show a material issue of fact exists, the Trustee, in the March 2015 Objections, cites to one piece of evidence concerning the identity of the entity that transferred the October 2007, December 2007, and January 2008 payments to Clear Skies (see Trustee's Objections to Bankr. Court's Rulings on Summ. J., filed March 20, 2015, at 4:18-19), specifically, a statement made by defendants in their answer that Synergy Equity, was the entity that transferred the subject sums to Clear Skies (see Pl.'s Compendium, Crom Decl. ¶ 8).  Although, in making those Objections, the Trustee cites to no evidence to support a finding, or even argues, that the payments made to Clear Skies by Synergy Equity can be considered payments made by the debtor, in her opposition to defendants' motion for summary judgment, filed in the bankruptcy court, the Trustee, citing In re Bay Plastics, Inc., 187 B.R. 315 (Bankr. C.D. Cal. 1995), did set forth her theory, specifically, that, under the circumstances presented here, payments made by a third party to purchase the debtor's stock should be treated as payments made by the debtor.

The Trustee's reliance on Bay Plastics, however, is unavailing.  There, the court found the debtor had "made a transfer," in light of evidence that, as part of a leveraged buyout in which the purchaser caused the debtor corporation to borrow the necessary funds from a bank, the debtor, in consideration therefor, "transferred a security interest in essentially all of its assets to [the bank]," which, at the direction of the debtor, transferred the funds to the purchaser, which, in turn, directed the bank to transfer the funds to the selling shareholders.  See id. at 328-29.  Under such circumstances, the transfer of those funds was treated as a transfer by the debtor to the selling shareholders, even though the sales transaction "was formally" with the purchasing entity.  See id. at 334 (finding "the shareholders [were] paid indirectly with assets from the corporation itself").  Here, by contrast, the Trustee cites to no evidence, either in its opposition to the motion for summary judgment or in the March 2015 Objections, to support a finding that the debtor gave Synergy Equity, or to anyone on Synergy Equity's behalf, monies, or anything else of value, to fund Synergy Equity's purchase from Clear Skies.  As the Bankruptcy Judge observed,

1  the debtor here, unlike the situation in Bay Plastics, "never had an interest in the

2  [p]ayments to Clear Skies in October 2007, December 2007, or January 2008."  (See Pl.'s

3  Compendium Ex. 8 at 11:18-20.)

4                                    **(c)  Conclusion**

5         On de novo review, the Court finds defendants are entitled to summary judgment on

6  Counts IV, V, and VI, to the extent such counts are based on the October 2007, December

7  2007, and January 2008 payments to Clear Skies.

8                              **(2) July 2007 Payment**

9         With respect to the remaining challenged payment, the July 2007 payment,

10  defendants argue they are entitled to summary judgment under 11 U.S.C. § 546(e).

11        Under § 546(e), "the trustee may not avoid . . . a transfer made by or to (or for the

12  benefit of) a . . . financial institution . . . in connection with a securities contract."  See 11

13  U.S.C. § 546(e).[10]  The term "securities contract" includes, inter alia, "a contract for the

14  purchase, sale, or loan of a security."  See 11 U.S.C. § 741(7)(i).[11]  Here, the parties agree

15  that the debtor and Clear Skies entered into a contract under which the debtor agreed to

16  purchase from Clear Skies shares of its own stock and that the July 2007 payment to Clear

17  Skies constituted part of the purchase price for said stock.  (See Defs.' Notice Ex. 54 at

18  4:13-16; Trustee's Submission of Documents, filed July 17, 2015 (hereinafter, "Pl.'s

19  Submission"), Ex. 29 at 2:23 - 3:5.)  Consequently, the Court finds it is undisputed that the

20  debtor made the July 2007 payment "in connection with a securities contract."  See 11

21  U.S.C. § 546(e).  The parties also agree that the debtor, when it made the July 2007

22  payment, transferred the funds to a "financial institution," see id., specifically, the Bank of

23

24        [10]The safe harbor provided in § 546(e) is itself subject to various exceptions, see id.,
25  none of which the Trustee has suggested is applicable to the July 2007 payment.

26        [11]The safe harbor provided for securities contracts was not added to § 546(e) until
   2006.  See Financial Netting Improvements Act of 2006, Pub. L. No. 109-390, § 5(b)(1)(B),
27  120 Stat. 2692 (2006).  As set forth above, Bay Plastics was decided in 1995.
   Consequently, to the extent any transaction described in Bay Plastics may be deemed a
28  securities contract, see Bay Plastics, 187 B.R. at 328-29, no exemption based thereon was
   available.

1   North Georgia, in which Clear Skies maintained at least two accounts.  (See Defs.' Notice

2   Ex. 56 ¶ 30.a.; Pl.'s Submission Ex. 29 at 3:4-8).  The parties disagree, however, as to

3   whether the transfer was "made by or to (or for the benefit of)" the Bank of North Georgia.

4   See 11 U.S.C. § 546(e).

5       In the March 2015 Objections, the Trustee argues that § 546(e) does not apply

6   where there is a securities contract but the financial institution is a conduit and does not

7   itself obtain a beneficial interest in the transferred funds.

8       To the extent any Circuit Court of Appeals has considered the argument made by

9   the Trustee, the argument has been rejected.  Specifically, in In re Quebecor World (USA)

10   Inc., 719 F.3d 94 (2nd Cir. 2013), the Second Circuit found, given that "[t]he plain language

11   of the statute refers to transfers made 'by or to (or for the benefit of)' a financial institution,"

12   the referenced "transfer may be either 'for the benefit of' a financial institution or 'to' a

13   financial institution, but need not be both."  See id. at 99-100 (emphasis in original).

14   Consequently, the Second Circuit reasoned, where the purchaser of a security transfers the

15   purchase price to a financial institution that, in turn, transfers the purchase price to the

16   seller, the transfer "is exempt from avoidance" under § 564(e), even though the financial

17   institution is "merely a conduit."  See id. at 98-99.

18       In so ruling, the Second Circuit considered a number of decisions analyzing a prior

19   version of § 546(e), which had used the phrase "made by or to" but did not include the

20   phrase "or for the benefit of."  See id. at 98 & 99 n.3.  As the Second Circuit noted, even

21   under the earlier wording of the statute, the Third, Sixth and Eighth Circuits had concluded

22   the financial institution did not need to obtain a beneficial interest in the transferred funds

23   and could be "merely a conduit," while one circuit, the Eleventh Circuit, had concluded the

24   financial institution needed to obtain a beneficial interest.  See id. at 98-100 and n.3 (citing

25   In re QSI Holdings, Inc., 571 F.3d 545, 550-51 (6th Cir. 2009), Contemporary Industries

26   Corp. v. Frost, 564 F.3d 981, 986-87 (8th Cir. 2009), In re Resorts Int'l, Inc., 181 F.3d 505,

27   516 (3rd Cir. 1999), and Matter of Munford, Inc., 98 F.3d 604, 610 (11th Cir. 1996).)  The

28   Second Circuit agreed with the majority rule and also observed that, in 2006, after the

1  above-referenced split of authority, Congress amended § 546(e) to add the phrase "(or for

2  the benefit of)"; while noting the amendment may have been "intended to resolve the split,"

3  the Second Circuit concluded a definitive determination as to the legislative purpose was

4  unnecessary, as "the words of the statute are unambiguous." See Quebecor, 719 F.3d at

5  99 & n.3.

6          The Court finds the Second Circuit's reasoning persuasive.  Specifically, as

7  amended in 2006, § 546(e) covers both transfers made "to" a financial institution and

8  transfers made "for the benefit of" a financial institution.  See 11 U.S.C. § 546(e).  The

9  statute, by its use of the word "or," plainly covers transfers that are made "to" a financial

10  institution under circumstances that are not "for the benefit of" that institution.

11  Consequently, defendants, to rely on § 546(e), need not show the Bank of North Georgia

12  itself obtained a beneficial interest in the transfer, and, as discussed above, it is undisputed

13  that the debtor made the July 2007 payment "to" the Bank of North Georgia.

14          Accordingly, on de novo review, the Court finds defendants are entitled to summary

15  judgment on Count IV, V, and VI, to the extent they are based on the July 2007 payment to

16  Clear Skies, for the reason that defendants have shown § 546(e) applies to said payment.

17                    **b.  Count IV:  Avoidance of Write-offs**

18          Count IV includes a claim, made pursuant to § 3439.04(a)(2) of the California Civil

19  Code, to avoid the above-referenced four "write-offs" of debts allegedly owed to the debtor,

20  on the theory the write-offs constituted constructive fraud.

21          Section 3439.04(a)(2) provides that a transfer by a debtor is fraudulent if the debtor

22  fails to receive "reasonably equivalent value in exchange for the transfer," see Cal. Civ.

23  Code § 3439.04(a)(2), and, in addition, either "[w]as engaged or was about to engage in a

24  business or a transaction for which the remaining assets of the debtor were unreasonably

25  small in relation to the business or transaction," or "[i]ntended to incur, or believed or

26  reasonably should have believed that he or she would incur, debts beyond his or her ability

27  to pay as they became due," see Cal. Civ. Code § 3439.04(a)(2)(A)-(B).

28  //

In moving for summary judgment, defendants offer evidence to establish that the debtor's assets, at all relevant times, were not unreasonably small in relation to its business, and that the debtor did not intend to incur, and had no reason to believe it would incur, debts beyond its ability to pay as they became due.  (See Defs.' Notice Ex. 56 ¶¶ 39-41.)  In the March 2015 Objections, the Trustee makes no argument that defendants' initial showing is deficient.  Rather, the Trustee argues that it has offered sufficient evidence from which the trier of fact could find the debtor did not receive reasonably equivalent value for the write-offs, which, as set forth above, is one of the required elements to establish a claim under § 3439.04(a)(2).

As noted, however, a plaintiff seeking to establish a claim for constructive fraud under § 3439.04(a)(2) must show not only that the debtor did not receive reasonably equivalent value for the transfer, but, in addition, must offer evidence to show that either the debtor's assets were "unreasonably small," see Cal. Civ. Code § 3439.04(a)(2)(A), or that the debtor intended to incur, or believed or reasonably believed it would incur, debts beyond its ability to pay as they became due, see Cal. Civ. Code § 3439.04(a)(2)(B).  The Trustee points to no evidence in the record to counter defendants' evidence as to either of the latter two elements, and, consequently, fails to show a triable issue of fact exists.

Accordingly, on de novo review, the Court finds defendants are entitled to summary judgment on Count IV to the extent it is based on a theory of constructive fraud as to the write-offs.

### c. Counts V and VI:  Alter Ego Allegations

In a section of the AC titled "Torchia's alter ego entities" (see Pl.'s Compendium Ex. 18 at 11:16), the Trustee alleges that "[e]ach of the [defendant] corporate or limited liability entities is or was owned and/or controlled by Torchia, aided and abetted by Celello" (see id. Ex. 18 ¶ 80).  The Trustee further alleges that "Torchia, aided and abetted by Celello, used assets and properties of the defendant corporate or limited liability entities as his own" (see id. Ex. 18 ¶ 84) and also "commingled the funds of the defendant corporate or limited liability entities with his own personal funds" (see id. Ex. 18 ¶ 85).  Of the eleven

1    defendants identified in the AC, nine are corporations or limited liability companies.  (See

2    id. Ex. 18 ¶¶ 4-14.)

3         In support of their motion for summary judgment, defendants offer evidence to show

4    the Trustee cannot establish Torchia is the alter ego of any of the nine defendant

5    corporations or limited liability entities.  In light of the Court's findings set forth above, the

6    claims remaining against any of the defendant entities are the following:  (1) the claim in

7    Counts V and VI that the Trustee may avoid and recover the write-off of an alleged

8    $4,457,653 debt owed to the debtor by Synergy Motor; and (2) the claim in Counts V and

9    VI that the Trustee may avoid and recover the write-off of an alleged $130,000 debt owed

10   to the debtor by National Viatical.  Consequently, the Court considers whether defendants

11   are entitled to summary judgment on the Trustee's allegations that Torchia, aided and

12   abetted by Celello, is the alter ego of Synergy Motor and/or National Viatical.

13        "California recognizes alter ego liability where two conditions are met:  first, where

14   there is such a unity of interest and ownership that the individuality, or separateness, of the

15   said person and corporation has ceased; and, second, where adherence to the fiction of

16   the separate existence of the corporation would sanction a fraud or promote injustice."  In

17   re Schwarzkopf, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation, alteration and

18   citation omitted).  "Factors suggesting an alter ego relationship include commingling of

19   funds and other assets and failure to segregate funds of the separate entities; the

20   treatment by an individual of the assets of the corporation as his own; the disregard of legal

21   formalities and the failure to maintain arm's length relationships among related entities; and

22   the diversion of assets from a corporation by or to a stockholder or other person or entity,

23   to the detriment of creditors, or the manipulation of assets between entities so as to

24   concentrate the assets in one and the liabilities in another."  Id. (internal quotation,

25   alterations, and citation omitted).

26        In support of the motion, defendants rely on declarations submitted by Torchia and

27   Celello.

28   //

In his declaration, Torchia states that Synergy Motor "is a new and used car dealership" (see Defs' Notice Ex. 57 ¶ 13), that National Viatical "buys, sells and services life settlement contracts" (see id. Ex. 57 ¶ 6), and that Torchia "directly or indirectly own[s] equity" in and is "an acting officer and/or director" of Synergy Motor and National Viatical, as well as each of the other named defendant entities (see id. Ex. 57 ¶ 5). Celello, in his declaration, states that he has "acted as primary general counsel" for Synergy Motor and National Viatical," as well as for the other defendants with the exception of River Green Investment Management, LLC, and River Green, LLC (see id. Ex. 56 ¶¶ 5, 6),[12] and, as to Synergy Motor and National Viatical, that each such entity has "always maintained separate bank accounts for any [of its] funds, and [each] files its own tax return" (see id. Ex. 56 ¶¶ 49, 54).

Additionally, each such individual defendant states in his declaration that he and each defendant entity, including Synergy Motor and National Viatical, have never (1) "commingled funds or other assets," (2) "had an unauthorized diversion of corporate funds or assets to other than corporate uses," (3) "had [its] assets treated as those of any of the other [d]efendants," (4) "failed to obtain authority to issue stock or to subscribe to or issue the same," (5) "failed to maintain minutes or adequate corporate records," (6) "confused the records of it and those of the other [d]efendants," (7) "used a single office or business location with the other [d]efendants or used a single attorney or set of employees with the other [d]efendants," (8) "concealed or misrepresented the identity of ownership, management or financial interest, or personal business activities," and that such entity has never (9) "been inadequately capitalized, undercapitalized, or had a total absence of corporate assets," (10) "been used to procure labor, services or merchandise for the other [d]efendants," or (11) "been used to transfer to it the existing liability of one of the other [d]efendants." (See id. Ex. 56 ¶ 47; id. Ex. 57 ¶ 37.)

The Court finds the above-referenced evidence is sufficient to meet defendants'

_____

[12]Celello states he has "an ownership interest" in the latter two defendant entities. (See id. Ex. 56 ¶ 6.)

1    initial burden to show "no genuine dispute as to any material fact" exists as to alter ego.

2    See Fed. R. Civ. P. 56(a).  See Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394

3    F.3d 1143, 1149 (9th Cir. 2004) (holding, under California law, where corporate defendant

4    "maintained separate bank accounts from [the individual defendant], and [the individual

5    defendant] never commingled funds with [the corporate defendant or used its assets as his

6    own," plaintiff failed as a matter of law to establish individual defendant was "alter ego" of

7    corporate defendant; further holding, "[t]he mere fact of sole ownership and control does

8    not eviscerate the separate corporate identity that is the foundation of corporate law").

9    Indeed, in the March 2015 Objections, the Trustee does not contend the evidence cited

10   above is insufficient to meet defendants' initial burden.[13]  Rather, the Trustee argues that a

11   triable issue of fact exists, relying on the evidence she submitted, specifically, the

12   declaration of her counsel of record, Loren Kieve ("Kieve").[14]

13          In his declaration, Kieve identifies various items of discovery the Trustee received

14   from defendants and then provides a number of opinions based on his review of such

15   discovery.  In the bankruptcy court, defendants filed a motion to strike the declaration on

16   the ground that none of the opinions stated therein is admissible or relevant.  The Court

17   next considers each of the opinions offered by Kieve that pertains to either Synergy Motor

18   or National Viatical, to determine whether such opinion is admissible and, if so, whether it is

19   relevant to the Trustee's alter ego allegations.

20   _____

21          [13]The Trustee does argue that an exhibit cited by Celello in his declaration is
     inadmissible, specifically, Exhibit 34 to defendants' motion for summary judgment, which
22   exhibit consists of copies of various corporate records, such as annual registration forms,
     certified by the Secretary of State of the State of Georgia.  (See id. Ex. 60, Tab 34.)
23   According to the Trustee, the documents comprising Exhibit 34 were not produced to the
     Trustee until defendants filed their motion for summary judgment, i.e., after the deadline to
24   complete fact discovery.  The Court finds it unnecessary to consider either the Trustee's
     objection or defendants' response thereto, as defendants' initial burden is met irrespective
25   of whether Exhibit 34 is considered.

26          [14]The Trustee also asserts she is entitled to recover from all defendants, under
     § 550, the value of the write-offs, on the asserted ground that said "defendants have
27   admitted that Torchia, Celello and entities they controlled . . . benefitted from the write-off of
     over $5,334,105.41 of advances to Torchia or entities he controlled."  (See Pl.'s Objections
28   to Bankr. Court Rulings on Summ. J. at 14:11-12.)  The Trustee, however, cites no
     evidence to support such assertion.

First, Kieve states the Trustee received from defendants two documents, attached to his declaration as Exhibits 4 and 5.  (See Pl.'s Compendium Ex. 16 ¶¶ 12, 14-15 and Exs. 4-5 thereto.)  Exhibit 4 appears to consist of excerpts from a ledger that lists amounts paid by the debtor to various vendors during the period April 3, 2006, through February 2, 2007 (see id. Ex. 4 to Ex. 16), one such vendor being National Viatical, while Exhibit 5 appears to consist of excerpts from a ledger that, at one point, states "NVI," presumably a reference to National Viatical, owed the debtor the sum of $130,000 as of December 31, 2005 (see id. Ex. 5 to Ex. 16).  Although, as to each such document, Kieve states he has "no indication of what this document represents," he nonetheless asserts each "shows a series of undocumented transactions that indicate that defendants Torchia and Celello were using [the debtor] as their private piggy bank to fund their other ventures, including National Viatical."  (See id. Ex. 16 ¶¶ 12, 15.)  Defendants object on the ground that Kieve lacks personal knowledge as to the nature of the transactions.  Given Kieve's concession that he does not know "what [either] document represents" (see id.), and the absence of any documentation of other evidence to support a finding that Torchia and Celello were using the debtor as a "private piggy bank" (see id.), the objection is sustained.  See Fed. R. Evid. 602 (providing non-expert witnesses "may testify only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").[15]

Second, Kieve states the Trustee received from defendants another document, attached to his declaration as Exhibit 6.  (See Pl.'s Compendium Ex. 16 ¶ 18 and Ex. 6 thereto.)  Exhibit 6 appears to consist of ledger excerpts that make reference to loans to or from "NVI," such as a reference to a "loan from NVI" to the debtor in the amount of $50,000."  (See id. Ex. 16, Ex. 6 attached thereto, third page.)  Kieve, who again concedes he has "no indication of what this document represents," states the document "shows a series of undocumented transactions that indicate that defendants Torchia and Celello were using [the debtor] to fund National Viatical."  (See id. Ex. 16 ¶ 18.)  Defendants again

---

[15]The Trustee acknowledges that Kieve is not offering expert testimony.  (See Pl.'s Compendium Ex. 10 at 5:6-7.)

1   object on the ground Kieve lacks personal knowledge as to the nature of the transactions.

2   Given Kieve's concession that he does not know "what [either] document represents" (see

3   id.), and the absence of any documentation or other evidence to support a finding that

4   Torchia and Celello were using the debtor in the manner asserted, the objection is

5   sustained.

6          Third, and lastly, Kieve lists each of the "corporate records of Synergy Motor" and

7   each of the "documents related to 'National Viatical [ ]'" the Trustee received from

8   defendants in discovery (see id. Ex. 16 ¶¶ 32-34, 51), and then states, apparently based

9   on his review thereof, that Synergy Motor "has therefore been moribund since at least

10  2007" (see id. Ex. 16 ¶ 35) and that National Viatical "has therefore been moribund since at

11  least 2010" (see id. Ex. ¶ 52).  Assuming a trier of fact could review the subject records

12  and, without the need of expert testimony, reach such conclusion, the Trustee fails to show

13  such evidence suffices to raise a triable issue as to her alter ego allegations.[16]  As

14  discussed above, a plaintiff seeking to establish alter ego liability must show "there is such

15  a unity of interest and ownership that the individuality, or separateness, of the said person

16  and corporation has ceased."  See Schwarzkopf, 626 F.3d at 1038.  The fact that a

17  corporation at some point ceases operations does not, by itself, tend to prove that, while it

18  was engaged in operations, it was the alter ego of the individual who controlled its

19  operations, see, e.g., Wiseman v. Sierra Highland Mining Co., 17 Cal. 2d 690, 693, 697-98

20  (1941) (holding, where corporate defendant had ceased doing business, individual

21  defendant not liable under alter ego theory for actions of corporation, as plaintiff failed to

22  show "an adherence to the corporate entity . . . would sanction a fraud"), nor does the fact

23  that a corporation has ceased operations, which presumably would make any judgment

24

25          [16]Further, the Court notes that Kieve's opinion as to when Synergy Motor became
    "moribund" appears to be contradicted by his description of some of the corporate
26  documents he reviewed in reaching such conclusion, one of which he describes as a "2008
    application to do business in Georgia under a trade name" and others he describes as
27  "three identical copies of 2008 certificate of secretary as to certain resolutions and
    corporate documents."  (See id. Ex. 16 ¶ 33.)  None of these potentially contradictory
28  documents, however, was attached to Kieve's declaration.

1 against it difficult to collect, by itself support imposition of alter ego liability, see Sonora

2 Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539 (2000) (holding "alter ego

3 doctrine does not guard every unsatisfied creditor of a corporation but instead affords

4 protection where some conduct amounting to bad faith makes it inequitable for the

5 corporate owner to hide behind the corporate form"; noting "[d]ifficulty in enforcing a

6 judgment or collecting a debt does not satisfy this standard").

7     In sum, the Trustee has failed to raise a triable issue of fact under the alter ego

8 doctrine.

9     Accordingly, on de novo review, the Court finds defendants are entitled to summary

10 judgment as to the issue of alter ego liability.

**CONCLUSION**

12     For the reasons stated above, the deferred portion of the Trustee's objections are

13 hereby DENIED.

14     **IT IS SO ORDERED.**

16 Dated:  October 16, 2015

MAXINE M. CHESNEY
United States District Judge